Smith, J.
(concurring in People v Gonzalez and dissenting in People v Lopez). I believe that defendants’ respective double jeopardy claims did not need to be preserved before their merits could be addressed, but that the claims are without merit. Thus, I concur in People v Gonzalez. Because the introduction of expert testimony in People v Lopez was unnecessary and prejudicial, I dissent in that case.
Preservation of Double Jeopardy Claims
Defendants claim that their convictions and sentences of both criminal sale of a controlled substance in or near school grounds and criminal sale of a controlled substance in the third degree contravened legislative intent, and thus violated their double jeopardy rights. Since defendants were given concurrent sentences, they claim that the punishment consists in being convicted and sentenced for two offenses. Defendants rely on Ball v United States (470 US 856 [1985]), in which the Court *84 held that a
“second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate conviction, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant’s eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant’s credibility and certainly carries the societal stigma accompanying any criminal conviction” (470 US at 864-865).
Today, the Court makes an unwarranted distinction between a claim challenging a second prosecution for the same offense either after acquittal or conviction, and a claim challenging multiple punishments for the same offense. Unlike the former, the majority argues, the latter is not of a fundamental nature and is considered abandoned if not raised at the trial level. Despite the majority’s view, all of the claims are branches of the same tree since they all involve a violation of the same constitutional clause. A double jeopardy violation grounded in multiple punishments is no less fundamental than one grounded in sequential prosecutions. No Supreme Court case has held otherwise.
The basic problem with the majority position is that it ignores federal jurisprudence on double jeopardy as it applies to multiple punishments. The majority concludes that double jeopardy is not involved where a legislature authorizes punishments for what amounts to the same crime. In making that determination, a court necessarily addresses the Double Jeopardy provision of the Federal Constitution. The Supreme Court so stated in Whalen v United States (445 US 684 [1980]) and in Missouri v Hunter (459 US 359 [1983]).
In Whalen, the Supreme Court reversed a decision of the District of Columbia Court of Appeals which held that consecutive sentences could be imposed for the crimes of rape and murder of the same victim. The Court held that the imposition of consecutive sentences was contrary to the intent of Congress and violated the Double Jeopardy provision of the United States Constitution. The Court thus made clear that the Double Jeopardy provision of the Constitution was implicated in rendering a decision as to the intent of Congress on punishment.
*85 The dissent by Justice Rehnquist in Whalen castigated the majority for relying on the Double Jeopardy Clause, stating: “Unlike the Court, I believe that the Double Jeopardy Clause should play no role whatsoever in deciding whether cumulative punishments may be imposed under different statutes at a single criminal proceeding” (445 US at 705).
Alhernaz v United States (450 US 333 [1981]) also states that the imposition of multiple punishments implicates the Constitution. The issue in the case was whether Congress intended consecutive sentences for two conspiracy statutes. In concluding that the intent of Congress was that consecutive sentences be imposed, the Court stated:
“Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution” (450 US at 344).
In Missouri v Hunter, the Supreme Court addressed the issue of “whether the prosecution and conviction of a criminal defendant in a single trial on both a charge of ‘armed criminal action’ and a charge of first degree robbery — the underlying felony — violates the Double Jeopardy Clause of the Fifth Amendment” (459 US at 360). The Supreme Court reiterated that a violation grounded in multiple punishments occurs when a defendant’s punishment exceeds that intended by the legislature.
Whether the Legislature intended to provide multiple punishments for the same crime is a question of fundamental constitutional dimension. That this type of double jeopardy claim involves conviction and sentencing by courts, and the other two types involve prosecution by the state, is not significant. All three types expose defendants to double jeopardy.
If the Legislature did not intend that a defendant be found guilty of both offenses, the trial court would have exceeded its jurisdiction in sentencing defendants on the unlawful conviction even though the sentences were concurrent. The trial court would have violated “ ‘the essential nature’ of the right to be sentenced as provided by law * * *” (People v Fuller, 57 NY2d 152, 156 [1982], quoting People v Craig, 295 NY 116, 120 [1946]).
*86 Moreover, this Court has consistently held that a claim of an illegal sentence may be raised for the first time on appeal (People v Samms, 95 NY2d 52 [2000]). Thus, “[w]hen dealing with unauthorized sentences, this Court has often applied a narrow exception to the preservation rule” (95 NY2d at 56).
In People v Michael (48 NY2d 1 [1979]), this Court held that preservation was unnecessary to a claim of double jeopardy, in that “there exist certain rules of law, be they founded on the common law, prescribed by statute, or mandated by our Constitutions, which are so basic to the validity of a criminal proceeding that the failure to observe such a rule may be raised at any time dining the appellate process,” and the “constitutional prohibition against double jeopardy is fundamental not only to the process of criminal justice, but to our system of government itself. It is, moreover, a doctrine with obvious jurisdictional overtones” (48 NY2d at 6-7). The Court found these factors dispositive in holding “that a double jeopardy defense based on the State and Federal Constitutions poses a question of law reviewable in this court despite the failure to raise it at the trial level” (id. at 7). This case is simply an application of People v Michael.
Merits of Double Jeopardy Claims
On the merits, when conduct results in the violation of two statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not (see Missouri v Hunter, supra, 459 US at 366, quoting Blockburger v United States, 284 US 299, 304 [1932]). That two statutes proscribe one offense under Blockburger creates a presumption that the Legislature did not intend that a defendant be punished under both. This presumption, however, can be rebutted by a “clear indication of contrary legislative intent” (id., quoting Whalen v United States, 445 US at 692 [emphasis omitted]).
As the People in the Gonzalez case conceded during oral argument, the application of Blockburger leads to the conclusion that criminal sale of a controlled substance in the third degree and criminal sale of a controlled substance in or near school grounds, as charged and proved, are the “same offense.” This is so because only the school grounds sale requires proof of an element not required by third-degree sale (see, Penal Law § 220.44 [2], incorporating by reference all of the operative subdivisions of Penal Law § 220.39). Third-degree criminal *87 sale, however, does not require proof of elements not required by criminal sale in or near a school (id.). Thus, the two statutes are like “concentric circles rather than overlapping circles” (4 LaFave, Israel and King, Criminal Procedure § 17.4 [b] [2d ed]).
As noted, the presumption resulting from the concentric nature of both statutes can be rebutted by a clear indication of contrary legislative intent. That intent is found in the interplay of the two statutes in the Criminal Procedure Law and Penal Law. Section 1.20 (37) of the Criminal Procedure Law provides that “[w]hen it is impossible to commit a particular crime without concomitantly committing, by the same conduct, another offense of lesser grade or degree, the latter is, with respect to the former, a lesser included offense.’ ” While it is impossible to commit sale in or near a school without also committing third-degree sale, they are both class B felony offenses, and thus, one is not of a “lesser grade or degree” than the other. Since both counts are concurrent (see, CPL 300.30 [3]; Penal Law § 70.25 [2]), and the third-degree sale count is not a lesser included offense of sale in or near a school, they are “non-inclusory,” and the trial court had the discretion to submit both counts to the jury (CPL 300.40 [3] [a]). Had the Legislature intended not to punish the same conduct with two statutes, it would have ensured that the two counts met the definition of “inclusory concurrent counts” (see, CPL 300.30 [4]; 300.40 [3] [b]).
The Legislature’s intention to allow for simultaneous convictions for third-degree sale and sale in or near a school is further evidenced by Penal Law § 70.25 (2), which addresses situations where, as here, “more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act,” and mandates that the sentences run concurrently. That the Legislature did not provide for cumulative sentencing is not evidence to the contrary since, as the Supreme Court held in Ball, a conviction is detrimental even if its sentence runs concurrently.
Thus, while the merits of the double jeopardy argument should be addressed, defendants’ contention must be rejected. “With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended” (Missouri v Hunter, 459 US at 366). It is clear that the New York Legislature intended to punish both crimes for which each defendant was found guilty.
*88 Expert Testimony
In People v Lopez, the evidence was that the defendant directed an undercover officer into a building where the drug transaction took place. After the sale, defendant was seen entering the building, exiting, and then entering the building again. The next time defendant exited the building, about 20 minutes after the sale, he got into the passenger seat of a car, with a female sitting in the driver’s seat, and a young child in the rear seat. Police officers stopped the car several blocks away from the building and arrested defendant who did not have any prerecorded buy money. The officers did not search the driver or the car. The codefendant, who had remained in the building during the entire time, was arrested several minutes later in front of the building. He, too, did not have any prerecorded money.
Prior to the introduction of evidence, the defendant objected to any expert testimony as unnecessary and prejudicial. He further argued that any expert testimony would indicate a conspiracy to sell drugs, a charge not contained in the indictment. The objection was renewed at the time that the expert witness took the stand.
Initially, when the prosecution offered the expert’s testimony to explain the time gap and the absence of prerecorded money, the court asked:
“How much expert testimony does it need, do you need to explain to a jury that money could be hidden or deposited somewhere else over the 25 minute period? * * *
[H]ow much expert testimony do you need to explain to a jury why money would be missing after 25 minutes? It’s not like it was a minute later. I mean I don’t understand why wouldn’t this fall within a jury’s common sense understanding of how a drug transaction could work.”
The prosecution responded that “we are presupposing that the jurors are expert enough to understand the intricacies of a buy and bust * *
Over defendant’s objection, the court eventually agreed that the expert could testify that a “typical drug transaction can involve a break down of roles where two people acting in concert, one steers the undercover to the person who actually exchanges the drugs.” The expert could not, however, give any *89 testimony suggesting that “defendants were involved in any broad scale conspiracy or to anything other than the transaction.”
After being recognized by the court as “an expert in street level drug activity,” the prosecutor asked the police expert to explain the “various roles involved with street level drug activity.” Over an objection, the expert answered, “Street level drug operations is multi-faceted. It has a number of different people who are involved * * Following this testimony, the court did sustain an objection to the expert’s testimony that the individual who acts as the “hand-to-hand” has a number of people who can help him. The expert then defined the role of the steerer, defined “prerecorded buy money” and explained why it is not often recovered. The expert explained the various ways drug dealers secrete money, such as giving it to other individuals, or hiding it in buildings, garbage pails, and any other place where bills can be hidden.
The expert also explained how a “drug organization” works:
“Well, again, the purpose of a drug organization, an organization who sells narcotics is to make money and, again, they go through lengths to protect not only the product of the drugs but also protect their proceeds which is the currency. And that in that vein, they use steps to remove the money or the drugs, whatever which way it happens to be, from the location from where the narcotics are being sold, or some way to secrete it some way so that if something happens such as the police or in some cases rival organization attempting to either get their stash or get their money, they have ways to protect it so it doesn’t get apprehended.”
An objection to this testimony was overruled.
After the expert testified, defendant’s counsel objected, arguing that the testimony was irrelevant and prejudicial. Defendant declined the court’s offer of a curative instruction as to the expert’s use of the term “drug organization,” agreeing with his codefendant that it would underscore the expert’s prejudicial testimony regarding a drug organization.
In People v Brown (97 NY2d 500 [2002]), this Court ruled that expert testimony was admissible in order to explain what might have happened to the buy money allegedly given to the defendant. In particular, the expert testimony in Brown “was *90 admitted to explain what might seem, to a lay observer, to be an anomalous fact — that someone who allegedly sold drugs to an undercover officer did not have money or drugs when arrested shortly thereafter” (id. at 506). Brown does not stand for the proposition that any time marked money is not found on a defendant, expert testimony can be used. In fact, the Court in Brown cautioned against the unnecessary use of expert testimony (id.).
The expert testimony here did not seek to explain something that is not within the knowledge of the ordinary person. In fact, prior to the expert’s testimony, the undercover officer testified to defendant’s steering him into a building where the codefendant or “hand-to-hand” gave him the drugs. The “straightforward” facts of this case did not warrant testimony from an expert in street-level drug dealing. It can hardly be described as an anomaly that police officers did not find any prerecorded drug money on either defendant Lopez or his codefendant when they were arrested about 20 minutes after the sale, during which time both were inside the building, the co-defendant remained entirely out of sight, and defendant was seen only once. In addition, defendant was inside the car for a short time. It does not require an expert to think of the possibility that the prerecorded money could have been disposed of somewhere in the building, or even in the car, during the 20 minutes after the sale. That possibility can emerge independently even in the mind of a juror who lacks any knowledge of how drugs are sold on neighborhood streets.
Moreover, the expert’s testimony about a drug organization or rival drug organizations was evidence of a conspiracy even though conspiracy was not one of the charges in the indictment, and the prosecutor was not obligated to prove a conspiracy beyond a reasonable doubt. When the possibility of disposing of money by a drug organization is reinforced, not just by the prosecutor, but by a police officer whom the court has recognized as an expert, the scales of justice are unevenly balanced against the defendant.
Finally, although this case was tried before our decision in Brown, no limiting instructions were given here. In Brown, this Court required that limiting instructions be given whenever expert testimony was introduced:
“Based on our concern that expert testimony be admitted only for a permissible purpose, we hold that this type of testimony must be paired with ap *91 propriate limiting instructions. If and when the trial court allows such testimony, it should inform the jury that it is free to reject it and that the testimony being admitted should in no manner be taken as proof that the defendant was engaged in the sale of narcotics. These crucial instructions should be reemphasized in the concluding charge to the jury’ (97 NY2d at 506).
The instructions were designed to aid the truth-seeking function of the jury and should be applied to this case and any case on appeal (see People v Favor, 82 NY2d 254, 265 [1993]). Here, no instructions were given to the jury at the time of the introduction of the expert testimony and only a general instruction was given in the charge to the jury. Thus, the expert’s testimony was unnecessary and prejudicial and did not comply with this Court’s rule in Brown.
In sum, in both Gonzalez and Lopez the merits of the double jeopardy issue should be addressed and the defendants’ argument rejected. In Lopez, the conviction should be reversed because of the unwarranted and prejudicial introduction of expert testimony.
Chief Judge Kaye and Judges Levine, Wesley, Rosenblatt and Graffeo concur with Judge Ciparick; Judge Smith concurs in result in a separate opinion.
In People v Gonzalez: Order affirmed.
Chief Judge Kaye and Judges Levine, Wesley, Rosenblatt and Graffeo concur with Judge Ciparick; Judge Smith dissents and votes to reverse in a separate opinion.
In People v Lopez: Order affirmed.